**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Bradley Smith, | No. CV-24-02405-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Elly's Phoenix Incorporated, et al., | |
| Defendants. | |

Pending before the Court is a Motion for Conditional Certification (the "Motion") of a collective action under the Fair Labor Standards Act ("FLSA") filed by Named Plaintiff Bradley Smith and Opt-In Plaintiff Ashley Smith (collectively "Plaintiffs"). (Doc. 26.)  For the following reasons, the Motion will be **granted**.

## I.   BACKGROUND

In 2023, Bradley[1] began working for Defendant's Elly's Phoenix, Incorporated, and its owners John Georges, Maria Georges, and Christos Georges (collectively, "Defendants"), doing business as Elly's Brunch & Café in Phoenix, Arizona, as a server. (Doc. 1 at 5–6, 9.)  Bradley's primary duties "included customer service, running food, cleaning, and other various server-related duties." (*Id.* at 9.)  Bradley "was compensated at an hourly rate of less than the applicable Arizona minimum wage during his employment on account of his receipt of tips." (*Id.*)

---

[1]   Named Plaintiff Bradley Smith and Opt-In Plaintiff Ashley Smith share the same last name but do not appear to be related.  They are referred to individually by their first names to avoid confusion, not out of any disrespect.

Bradley alleges that Defendants required him, and all similarly situated servers and bartenders, to forfeit between two and ten dollars from their earned tips directly to their manager, Jessica L.[2], each shift. (*Id.*) Bradley also alleges that Defendants required him and similarly situated employees to "contribute six percent (6%) of net sales toward a tip pool for a food runner," despite not employing a food runner at the time. (*Id.*) Bradley alleges that "such tips were taken directly by management or ownership and were not distributed to other employees such as in the case of a tip pooling arrangement," and instead went from "the person who earned them – directly to Defendants." (*Id.* at 10.)

On September 11, 2024, Bradley filed this FLSA action against Defendants. (*See generally id.*) On May 27, 2025, Plaintiffs filed the instant Motion pursuant to 29 U.S.C. § 216(b), (Doc. 26), along with supporting declarations of Bradley and Ashley, (Docs. 26-1, 26-2), and a proposed Notice of Rights and Consent to Join form, (Doc. 26-3). Plaintiffs request approval of the proposed Notice and Consent to Join form and authorization to send notice via mail, email, and text message twice during a 90-day opt-in period. (Doc. 26 at 10–11.) Plaintiffs also ask the Court to order Defendants to produce, within five days of its order, a list in electronic and importable format of all individuals meeting the collective definition, including their names, mailing addresses, email addresses, telephone numbers, social security numbers or Individual Taxpayer Identification Number ("ITIN"), dates of work, and any identification numbers assigned by Defendants. (*Id.* at 12.) On July 17, 2025, Defendants responded, stating "that they do not object to the conditional certification." (Doc. 28 at 1.) The parties did not request oral argument, and the Court does not believe oral argument is necessary, so this motion is decided without holding a hearing. *See* LRCiv 7.2(f).

## II.    LEGAL STANDARD

The FLSA provides that a collective action for unpaid wages "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b)

---

[2]    To protect the privacy of individuals referenced herein, the Court refers to non-party individuals by their first name and last initial only.

permits workers to "litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018).

Although the FLSA does not provide a "procedure for determining whether the [collective-action] mechanism is appropriate," courts typically follow a two-step process. *Id.* at 1108–09. The first step is preliminary, or conditional, certification. *Id.* at 1109. At this stage, courts determine whether the proposed collective members are "similarly situated" such that court-supervised notice of the action should be disseminated to potential opt-in plaintiffs. *Id.* "Party plaintiffs are 'similarly situated,' and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Kostov v. Maricopa Cnty. Special Health Care Dist.*, 2023 WL 11991160, at *1 (D. Ariz. 2023) (citing *Campbell*, 903 F.3d at 1114).

At the conditional certification stage, "the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. "The level of consideration is lenient." *Id.* Courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (quotation marks omitted). In other words, a plaintiff must show that "some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Id.* (quotation marks omitted). The shared issue of law or fact must be material to the disposition of the FLSA claims. *Campbell*, 930 F.3d at 1114. "Plaintiffs' allegations need neither be strong nor conclusive." *Colson*, 687 F. Supp. 2d at 926 (cleaned up). "Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." *Scales v. Info. Strategy Design Inc.*, 356 F. Supp. 3d 881, 885 (D. Ariz. 2018) (quotation marks omitted).

At the conditional certification stage, "courts do not review the underlying merits

- 3 -

of the action" because "[i]t is not the Court's role to resolve factual disputes or decide substantive issues going to the ultimate merits." *Colson*, 687 F. Supp. 2d at 926 (cleaned up). As is true in all FLSA cases, the background principle is that "FLSA is a remedial statute, [and] must be interpreted broadly." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 950 (9th Cir. 2019) (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999) (en banc)). The similarly situated standard at the conditional certification phase is therefore "fairly lenient and typically results in certification." *Vanorden v. ECP Optometry Servs. LLC*, 2024 WL 5200483, at *4 (D. Ariz. 2024) (quotation marks omitted).

In cases where preliminary certification has been granted, defendants may typically move to decertify the collective action on or after the close of discovery. *Campbell*, 903 F.3d at 1109. At this decertification stage—the second stage in the two-step process—the Court may decertify the collective action and require the plaintiffs to pursue their actions individually, "for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.*

## III.    ANALYSIS

### A.    Conditional Certification

Plaintiffs have met their burden of showing that the putative collective members are similarly situated for purposes of conditional certification. Plaintiffs must show "some identifiable factual or legal nexus" binding together the claims of the collective members such that hearing them together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA. *Colson*, 687 F. Supp. 2d at 925. The allegations in the Complaint, supplemented by the declarations of Bradley and Ashley, satisfy this standard.

Plaintiffs seek to certify the following collective:

> All individuals who worked at any times for Defendants' Elly's Café & Brunch restaurant, earned an hourly rate of pay less than the applicable Arizona minimum wage on account of their receipt of tips, and who worked in the position(s) of server, bartenders, and/or a job of similar title and

characteristics, starting three years prior to the filing of the Complaint through the present.

(Doc. 26 at 5.)  Bradley and Ashley are both members of this proposed collective because they worked as servers for Defendants during the relevant period and were subject to the same tip practices alleged in the Complaint.  (Doc. 26-1 ¶¶ 4–5; Doc. 26-2 ¶¶ 5–6.)

FLSA expressly prohibits employers from keeping tips received by their employees, "including allowing managers or supervisors to keep any portion of [those] tips, regardless of whether or not the employer takes a tip credit."  29 U.S.C. § 203(m)(2)(B).  Plaintiffs allege that Defendants instituted two uniform policies that violated this prohibition and applied to all servers and bartenders at Elly's Brunch & Café.

First, Plaintiffs allege that Defendants required every server and bartender to forfeit between two and ten dollars from their earned tips directly to their manager, Jessica L., each shift, even though Jessica L. served in a managerial capacity and did not perform functions customarily associated with tipped employees.  (Doc. 1 ¶ 47; Doc. 26-1 ¶¶ 14–15; Doc. 26-2 ¶¶ 15–16.)  Requiring tipped employees to share gratuities with a manager is precisely the conduct § 203(m)(2)(B) prohibits.  Second, Plaintiffs allege that beginning approximately December 16, 2023, Defendants required every server and bartender to contribute a percentage of net sales toward a tip pool designated for a food runner, despite not employing a food runner at the time, with those funds retained by management rather than distributed to any eligible employee.  (Doc. 1 ¶¶ 48–49; Doc. 26-1 ¶¶ 10–13; Doc. 26-2 ¶¶ 11–14.)  This practice constitutes a second independent basis for liability under § 203(m)(2)(B).

The declarations of Bradley and Ashley corroborate these allegations.  Both Plaintiffs worked as servers for Defendants during the relevant period, were subject to the same tip-forfeiture practices, and attest from personal knowledge that these practices were uniformly applied to all servers at Elly's Brunch & Café.  (Doc. 26-1 ¶¶ 10–17; Doc. 26-2 ¶¶ 11–20.)  Both Plaintiffs identify by name several co-workers who were subject to the same practices, further supporting the existence of a common policy affecting the proposed

collective.  (Doc. 26-1 ¶ 16; Doc. 26-2 ¶ 17.)  Additionally, Ashley's declaration is corroborated by a contemporaneous email she sent to Defendants' corporate office on August 28, 2024—months before this litigation commenced—in which she described both the manager tip-skimming and the phantom food-runner contribution in detail and identified co-workers who had experienced the same treatment.  (*See* Doc. 26-2 at 9.)

Taken together, these allegations and supporting evidence establish that Plaintiffs and the proposed collective members worked in the same positions, at the same single restaurant location, under the same management, and were subject to the same two allegedly unlawful tip practices.  Their claims therefore arise from the same decision, policy, or plan and present a common issue of law—whether Defendants' tip practices violated § 203(m)(2)(B)—that is material to the disposition of every collective member's FLSA claim.  *See Campbell*, 903 F.3d at 1117.  Notably, Defendants do not dispute that the proposed collective members are similarly situated—their non-opposition to this Motion confirms the absence of any genuine dispute on that question.  (Doc. 28.)

Accordingly, Plaintiffs have satisfied the lenient standard for conditional certification, and the Motion will be granted.

### B.     Form and Method of Notice

Potential collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  The Court "has discretion regarding the form and content of the notice to putative collective members."  *Coyle v. Flowers Foods Inc.*, 2016 WL 4529872, at *6 (D. Ariz. 2016) (quotation marks omitted).

Plaintiffs propose sending notice via mail, email, and text message twice during the opt-in period—once within seven days of receiving the list of putative collective members and once at the midpoint of the opt-in period to those who have not yet joined.  (Doc. 26 at 10–11.)  The proposed Notice informs potential opt-in plaintiffs of the pendency of the action, their right to join, the consequences of joining or not joining, the applicable fee

arrangement, and that the Court has not yet ruled on the merits. (*See generally* Doc. 26-3.) It also correctly advises that Defendants cannot retaliate against any individual for joining the lawsuit. (*Id.* at 3.) The Court finds the proposed Notice fair, accurate, and neutral, and consistent with the types of notice approved by courts in this district. *See e.g.*, *Vega v. All My Sons Bus. Dev. LLC*, 2022 WL 684380, at *3, 5 (D. Ariz. 2022). Defendants do not object. (Doc. 28.)

Notice via mail, email, and text message will be approved. The opt-in period shall be sixty (60) days from the date of this Order.[3] Two rounds of notice during the opt-in period will be approved.

### C. Production of Collective Members' Contact Information

Prompt disclosure of the names and contact information of putative collective members is necessary to provide notice to those individuals. *Hoffmann-La Roche*, 493 U.S. at 170. District courts routinely order the production of such information in FLSA collective actions. *See e.g.*, *Bados Madrid v. Peak Constr., Inc.*, 2009 WL 2983193, at *2, 4 (D. Ariz. 2009). Defendants do not object to this request. (Doc. 28.)

Plaintiffs request that Defendants produce, within five days of this order, a list in electronic and importable format of all individuals meeting the collective definition, including their names, mailing addresses, email addresses, telephone numbers, social security numbers or ITINs, dates of work, and any identification numbers assigned by Defendants. (Doc. 26 at 12.) The request is approved, with two exceptions. First, Plaintiffs seek social security numbers and ITINs but "do not explain why a social security number [or ITINs are] necessary to communicate with clients." *Vanorden*, 2024 WL 5200483, at *11 (quotation marks omitted). This request is "unnecessarily intrusive on potential opt-in plaintiffs' privacy" and is therefore denied. *See id.* Second, Defendants need not produce "any identification numbers assigned" to potential collective members, as Plaintiffs have not explained what such numbers are or why they would be necessary to

---

[3] The Court's March 17, 2025 Order (Doc. 19) previously provided for a thirty (30) day opt-in period. This Order supersedes and overrides that provision and establishes a sixty (60) day opt-in period.

effectuate notice.  Plaintiffs' counsel shall utilize all information produced solely for the purpose of issuing notice.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Conditional Certification (Doc. 26) is **granted**.  The collective, as defined in this order, is conditionally certified.

**IT IS FURTHER ORDERED** that Defendants shall, **within five days** of the date of this Order, provide Plaintiffs' counsel with the following contact information for all individuals meeting the collective definition: (1) full name, (2) all known mailing addresses, (3) all known email addresses, (4) all known telephone numbers, and (5) dates of work.  Plaintiff's counsel shall utilize this information only for the purpose of issuing notice.  Defendants shall not produce social security numbers, ITINs, or any internal identification numbers.

**IT IS FURTHER ORDERED** that the proposed Notice of Rights and Consent to Join forms (Doc. 26-3) are approved for distribution, subject to the insertion of all relevant dates.  Plaintiffs shall send initial notice via mail, email, and text message **within seven days** of receiving collective members' contact information from Defendants. Plaintiffs may send one reminder notice via mail, email, and text message to any collective member who has not returned an executed Consent to Join form to Plaintiffs' counsel at the midpoint of the opt-in period.

**IT IS FURTHER ORDERED** that the opt-in period shall be **sixty (60) days** from the date of this Order.

**IT IS FURTHER ORDERED** that **within thirty (30) days** after the close of the opt-in period, the parties shall meet, confer, develop, and file an updated Rule 26(f) Joint Case Management Report pursuant to the Court's previous order (Doc. 16).  The Court will set a Case Management Conference if it deems that one is necessary after it reviews the parties' updated Rule 26(f) report.

Dated this 11th day of March, 2026.

Honorable Sharad H. Desai
United States District Judge